ETHRIDGE, Chief Justice:
L. J. Herrington, appellant, brought this suit in the Circuit Court for the Second Judicial District of Jones County against appellees, Central Oil Company, Gulf Coast Drilling and Exploration Company and Kelly Brothers Contractors. Herrington was injured when a work-over drilling rig, being used in salvage operations on Central Oil Company’s oil and gas lease, fell and injured him. He charged that the defendants negligently constructed a board platform or turn-around next to the well hole without adequate preparation of the foundation, and that this caused the rig to fall on him. At the close of plaintiff’s case, the trial court gave a directed verdict for Gulf Coast; at the close of all the evidence, it gave peremptory instructions for Central Oil Company and Kelly Brothers. We conclude that the trial court was correct, and affirm its judgment.
Central, the owner of an oil and gas lease on the land in question, staked a location for the drilling of an oil well. On May 23, 1965, it entered into a drilling contract with Gulf Coast, under which Gulf Coast was to drill the well to a specified total depth, but was not to complete the well as a producer. The location was wet and marshy. This made it necessary for a board road and location to be constructed to support heavy equipment. Gulf Coast let bids on construction of the board location and awarded the contract to Kelly Brothers, who in late May 1965 completed the construction.
The swampy area contained some small timber, so Kelly cut the trees on it to one inch above ground level, and cleared the site. The first layer of boards was laid on the ground, but was not placed on top of any of the low stumps. The boards *527 were from 2\/% to 3 inches in thickness. The second layer of boards was laid side by side in a criss-cross pattern, and the third layer in the opposite direction. Those who constructed the platform stated there was a fourth layer, but plaintiff’s evidence would justify a finding of three. The board location was flat. After Kelly Brothers completed construction of the platform, Gulf Coast moved its large drilling rig, weighing with pipe over one million pounds, and drilled the well to the contracted total depth. Central then directed Gulf Coast to remove its rig so that it could complete the well as a producer with a smaller rig. Gulf Coast notified Kelly, which owned the boards, that it was through with them. However, Central requested Kelly to leave the boards in place in order that additional work could be performed by others. Gulf Coast removed its rig and never returned to the premises after July 20, 1965.
Another work-over rig moved on the location but failed to get any production. Central, therefore, decided to abandon the well, and contracted with B. & B. Well Service Company for the pipe to be salvaged. On November 27, 1965, Herrington, B. & B.’s foreman, brought its work-over rig on the premises to remove the pipe. He set it up and began lifting about 60,000 pounds of pipe, when the rig fell and injured him.
No evidence, at least no more than a scintilla, indicates any negligence on the part of Kelly in construction of the board platform for the well. Customary and prudent construction would permit either of two methods for building the board turn-around: completely removing the stumps, placing dirt over the area, and then laying the boards; or cutting the stumps low, laying the first layer of boards on each side of the stumps and other layers criss-crossed above the same. The first layer of boards was of considerably more than sufficient thickness to rise well above the stumps next to them, which were not over one inch above the ground. Kelly was an experienced and able contractor. The platform was composed of either three or four layers of boards ranging from 2]/$ to 3 inches in thickness. A ditch was dug around the drilling area to prevent water from entering it. Gulf Coast used the platform to support a drilling rig which, with pipe, weighed more than one million pounds. Subsequently, V. A. Sauls used the platform to support a sky-top work over rig which was bigger and heavier than the one which fell on Her-rington. After B. & B.’s rig had fallen, the same company moved another on the location, after replacing boards scattered by the fall, and without incident removed the pipe.
Although the declaration did not assert that the negligence of Kelly consisted of leaving stumps under the drilling platform, this was the basic theory of plaintiff’s evidence: that when he applied pressure to the rig by lifting the pipe, the south end of the platform remained steady because of the stumps and the north end sank and caused the rig to fall. However, there is no evidence to support this theory. The south side of the platform would have had to sink between U/& to 2 inches to rest upon the top of the stump. Moreover, two witnesses who were looking at the platform at the time of the fall testified that none of the boards gave or bended under pressure, and that there were none which broke or cracked before the rig began falling. Finley, in reply to a question to state what he saw happen out there, said that “the foundation up under the rig give (sic) way.” This in context was a statement of opinion and not of fact as to what he saw. On cross-examination, Finley stated that what he meant was that water and mud was “squashing through the boards.” Called later as a witness for defendant, Finley further explained by saying that before the rig began to fall, he did not see anything break, crack, or give way.
*528 In short, the undisputed testimony of these two eyewitnesses who were watching the platform and rig is that they did not see the platform break or give way before the rig fell. There is simply no evidence that whatever stumps were under the south end of the location had any effect on the fall of the rig. Moreover, there is no evidence tending to show that the rig was proximately caused to turn over because of the condition of the site, and appellant had the burden of showing proximate cause as well as negligence. For all of these reasons, the circuit court was correct in directing verdicts for the defendants-appellees.
Affirmed.
RODGERS, PATTERSON, SMITH and ROBERTSON, JJ., concur.